UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

L.P.O.E., Inc., a Minnesota Corporation;

Down In the Valley, Inc., a Minnesota Corporation;

Disc and Tape, Inc., a Minnesota Corporation; and,

Hideaway LLC., a Minnesota Corporation.

Midwest Botanicals, a a Minnesota Corporation,

        Plaintiffs,

**COMPLAINT**
Declaratory Judgment
Injunctive Relief
Damages

vs.

Civil Case No. _11cv499 (ADM/LIB)_

The United States Drug Enforcement Administration,
U.S. Department of Justice; and its Director, D.E.A., Michele M. Leonhart

    Defendants.

The above-named Plaintiffs, for their Complaint against Defendants, hereby allege the following:

## I JURISDICTION

**1.01** Jurisdiction of this Court is invoked under the laws of the United States, in particular under Title 28 U.S.C. Sections 1331, 1346(A)(2), and the Fifth Amendment to the Constitution of the United States guaranteeing Due Process.

**1.02** Jurisdiction is also invoked under the Administrative Procedure Act, 5 U.S.C. §§ 551-559; and under the Regulatory Flexability Act, 5.U.S.C. §§ 601-612; and under the Congressional Review Act §§ 801-808.

## II. VENUE

**2.01** Venue in the United States District Court, District of Minnesota is proper pursuant to 28 USC 1391(e).

## III. PARTIES

**3.01** Plaintiff L.P.O.E. is a corporation organized under the laws of the state of Minnesota. At all times pertinent to this lawsuit, it operates and has operated a retail store known as Last Place on Earth, located at 120 East Superior Street, Duluth, MN.

**3.02** Plaintiff Down in The Valley, Inc. (DITV) is a corporation organized under the laws of the state of Minnesota. At all times pertinent to this lawsuit, it operates and has operated a retail store known as Down in The Valley, Inc., located at 8020 Minnesota 55, Golden Valley, MN.

**3.03** Plaintiff Disc & Tape, Inc. (D&C) is a corporation organized under the laws of the state of North Dakota. At all times pertinent to this lawsuit, it operates and has operated a retail store know as Disc & Tape, Inc. located at 1502 Broadway, Fargo, ND.

**3.04** Plaintiff Hideaway, LLC ("Hideaway") is a corporation organized under the laws of the state of Minnesota. At all times pertinent to this lawsuit, it operates and has operated a retail store known as Hideaway, LLC, located at 1309 Fourth Street SE, Minneapolis, MN.

**3.04** Plaintiff Midwest Botanicals is a corporation, organized under the laws of the state of Minnesota. At all times pertinent to this lawsuit, it operates, and has operated a manufacturing facility in Winona, MN

**3.05**     Defendant United States Drug Enforcement Administration ("DEA") is a United States government agency, located at Office of Diversion Control, 8701 Morrissette Drive, Springfield, VA.

**3.06**     Defendant ., Michele M. Leonhart, is the former Deputy Director, and now is the Director of the DEA, U.S. Department of Justice.

## IV. FACTUAL BACKGROUND COMMON TO ALL CLAIMS FOR RELIEF

**4.01**     DEA Deputy Director Michele M. Leonhart caused the issuance of a "Notice of Intent" in the Federal Register: November 24, 2010 (Volume 75, Number 226)] [Proposed Rules]   [Page 71635-71638] [Docket No. DEA-345N] to amend, pursuant to the Controlled Substances Act , 21 U.S.C. §§ 801-904, (CSA) pursuant to the temporary scheduling provisions under 21 U.S.C. 811(h) of the CSA, to place five synthetic "cannabinoids" into Schedule I.

**4.02**     The "Summary" of the intended scheduling, as set forth by the DEA states:

> SUMMARY: The Deputy Administrator of the Drug Enforcement Administration (DEA) is issuing this notice of intent to temporarily place five synthetic cannabinoids into the Controlled Substances Act (CSA) pursuant to the temporary scheduling provisions under 21 U.S.C. 811(h) of the CSA. The substances are 1-pentyl-3-(1-naphthoyl)indole (JWH-018), 1-butyl-3-(1-naphthoyl)indole (JWH-073), 1-[2-(4-morpholinyl)ethyl]-3-(1-naphthoyl)indole (JWH-200), 5-(1,1-dimethylheptyl)-2-[(1R,3S)-3-hydroxycyclohexyl]-phenol (CP-47,497), and 5-(1,1-dimethyloctyl)-2-[(1R,3S)-3-hydroxycyclohexyl]-phenol (cannabicyclohexanol; CP-47,497 C8 homologue). This intended action is based on a finding by the DEA Deputy Administrator that the placement of these synthetic cannabinoids into Schedule I of the CSA is necessary to avoid an imminent hazard to the public safety. Finalization of this action will impose criminal

sanctions and regulatory controls of Schedule I substances under the CSA on the manufacture, distribution, possession, importation, and exportation of these synthetic cannabinoids.

**4.03** The Deputy Director further represented in the Federal Register notice described in paragraph 4.01 above, that the scheduling of the substances would comply with the Regulatory Flexibility Act (5 U.S.C. 601-612) and "certified" ...

> " that this regulation will not have a significant economic impact on a substantial number of small entities."

**4.04** The Deputy Director cited no epidemiology studies, or any scientific or economic data which support the certification set forth in paragraph 4.03 above.

**4.05** The Deputy Director further represented in the Federal Register notice described in paragraph 4.01 above that;

> " This rule is not a major rule as defined by 804 of the Small Business Regulatory Enforcement Fairness Act of 1996 (Congressional Review Act). This rule will not result in an annual effect on the economy of $100,000,000 or more; a major increase in costs or prices; or significant adverse effects on competition, employment, investment, productivity, innovation, or on the ability of United States-based companies to compete with foreign-based companies in domestic and export markets."

**4.06** The Deputy Director cited no epidemiology studies, or any scientific or economic data which support the conclusion set forth in paragraph 4.05 above.

**4.07** The Deputy Director further represented in the Federal Register notice described in paragraph 4.01 above that :

> "JWH-018, JWH-073, JWH-200, CP-47,497, and cannabicyclohexanol share pharmacological similarities with the Schedule I substance THC".

**4.08**   The Deputy Director cited no refereed scientific research to support her conclusion in paragraph 4.07 above.

**4.09**   The Deputy Director cited alleged "self-reports" on the internet, with no basis to believe they were posted by persons who had actually used any of the substances subject to the Notice.

**4.08**   The Deputy Director indicated that it is her intent to issue such final order as soon as possible after the expiration of 30 days from the published notice of intent; and upon publication of said final order possession of any of the substances set forth in the Rule will become a felony; will not be available for scientific research and presumably will also apply to any "analogs" of the five substances listed, without giving appropriate notice of what "analog(s)" might be also illegal to possess.

**4.09**   There have been no public hearings relating to the scheduling of the substances at which scientific evidence could be presented or challenged.

**4.10**   The scientific research published, to date, does not support the actions of the Deputy Director.

**4.11**   The statute under which the Deputy Director is proceeding, on its face precludes judicial review of the actions being undertaken by the Deputy Director 21 U.S.C. § 811(6), in derogation of the separation of powers doctrine based upon Article III of the United States Constitution.

**4.12**   Without judicial scrutiny, the Deputy Director is therefore de facto, acting in lieu of Congressional approval; in violation of the Administrative Procedure Act, and meaningful review can only be obtained following the issuance of a "final rule"--- an event which does not have to occur for at least 12 months and possibly 18 months in the future, by which time hundreds of thousands of Americans may face criminal prosecution, thousands of retail merchants may also face criminal prosecution, or be forced to close, thus causing a financial impact well in excess of $100,000,000.00 and causing the termination of thousands of jobs involved in the retail operations currently selling the products which the Deputy Director is seeking to make illegal for any possession, use, manufacture, distribution and scientific research.

**4.13**   Plaintiffs in the above-entitled matter sell products that fall within the definition of "synthetic cannabinoid," as set forth in the notice of intent referenced in paragraph

4.01 above.; and in the "Final Temporary Rule" being published tomorrow in the Federal Register, described in more detail below:

  **4.14**  On March 1, 2011 the "Final Temporary Rule" is being published in the Federal Register: **Schedules of Controlled Substances: Temporary Placement of Five Synthetic Cannabinoids into Schedule I**

**AGENCY:** Drug Enforcement Administration (DEA), U.S. Department of Justice

**ACTION:** Final Order

**SUMMARY:** The Administrator of the Drug Enforcement Administration (DEA) is issuing this final order to temporarily place five synthetic cannabinoids into the Controlled Substances Act (CSA) pursuant to the temporary scheduling provisions. The substances are 1-pentyl-3-(1-naphthoyl)indole (JWH-018); , 1-butyl-3-(1-naphthoyl)indole (JWH-073), 1-[2-(4-morpholinyl)ethyl]-3-(1-naphthoyl)indole (JWH-200), 5-(1,1-dimethylheptyl)-2-[(1R,3S)-3-hydroxycyclohexyl]-phenol (CP-47,497), and 5-(1,1-dimethyloctyl)-2-[(1R,3S)-3-hydroxycyclohexyl]-phenol (cannabicyclohexanol; CP-47,497 C8 homologue).

This action is based on a finding by the Administrator that the placement of these synthetic cannabinoids into Schedule I of the CSA is necessary to avoid an imminent hazard to the public safety. As a result of this order, the full effect of the CSA and its implementing regulations including criminal, civil and administrative penalties, sanctions and regulatory controls of Schedule I substances will be imposed on the manufacture, distribution, possession, importation, and exportation of these synthetic cannabinoids.

  **V.**  **FIRST CAUSE OF ACTION---UNCONSTITUTIONALITY OF RULE**

  Plaintiffs restate paragraphs 1.01-1.02, 2.01, 3.01-3.07, 4.01-4.14 and allege further:

  **5.01**  The Rule is facially unconstitutional and unconstitutional as applied to Plaintiffs upon the following grounds:

  a. The rule constitutes an unreasonable burden on interstate commerce, in violation of Article I, Section 8(3) of the United States Constitution.

    b. The rule lacks a rational basis and is unrelated to any legitimate governmental purpose and, as such, violates the Due Process Clause of the Fifth Amendment to the United States Constitution.

    c. The rule, based upon the "Delegation of Legislative Power" set forth in U.S. vs. Touby, violates the separation of powers doctrine set forth in the U.S. Constitution

    d. The rule is arbitrary and capricious insofar as the Government's position in File No. 10-CV-4944 is that "science doesn't matter"; and the "Intelligible Principle's doctrine does not encompass Temporary Rule making with absolutely no scientific evidence being presented by the Agency.

    e. The rule is contradictory to all of the government studies involving so-called "Synthetic Cannabinoids"

**5.02** The Fifth Amendment to the United States Constitution guarantees to its citizens due process of law.

**5.03** Procedural Due Process requires notice, an opportunity to be heard and a determination by a neutral fact-finder, with a right to appeal.

**5.04** With regard to the Rule, there was no notice, no opportunity to be heard and the post-enactment remedies available fail to satisfy Due Process.

**5.05** To satisfy due process, a penal statute must define the criminal offense (1) with sufficient definiteness that ordinary people can understand what conduct is prohibited and (2) in a manner that does not encourage arbitrary and discriminatory enforcement. *U.S.C.A. Const.Amend. 5.*

**5.06** Because of the existence of 21 U.S.C.A. § 802 (32)(A) ,"analogues" of the five substances set forth in the Rule would also be illegal to possess. As applied to the five substances listed, no person of normal intelligence would be able to determine what is, and what is not "illegal" and thus the Rule is Unconstitutionally Vague.

**5.07**   Before a "rule," as defined by statute, 5 U.S.C.A. § 551, can take effect, the Federal agency promulgating such rule must submit to each House of the Congress and to the Comptroller General certain information as prescribed by statute. 5 U.S.C.A. § 801

**5.08**   If the rule is not a "major rule," as defined by statute, 5 U.S.C.A. § 804 it will take effect as otherwise provided by law after submission to Congress. If the rule is a major rule, it will generally] take effect on the latest of:

(1) the later of the date occurring 60 days after the date on which the Congress receives the information referred to above, or the date the rule is published in the Federal Register, if so published;]

(2) if the Congress passes a joint resolution of disapproval relating to the rule and the President signs a veto of such resolution, the earlier of the date on which either House of Congress votes and fails to override the veto of the President, or the date occurring 30 session days after the date on which the Congress received the veto and objections of the President;] or

(3) the date that the rule would have otherwise taken effect, if not for the provisions of 5 U.S.C.A. § 801 (unless a joint resolution of disapproval is enacted).

## VI.   SECOND CAUSE OF ACTION---VIOLATION OF SEPARATION OF POWERS

Plaintiffs restate paragraphs 1.01-1.02, 2.01, 3.01-3.07, 4.01-4.14, 5.01-5.08 and allege further:

**6.01**   The statute under which the Director is proceeding states that it is "not subject to judicial review".

**6.02**   Judicial review is paramount to maintaining the free society in which all citizens of the United States exist.

**6.03** The Separation of Powers doctrine, evolving as it has since the birth of the nation, derives from Article III of the United States Constitution and provides essential checks and balances between the branches of government.

**6.04** By acting pursuant to the Statute relied upon by the Director, the powers of the Judicial branch of government is set-aside by the legislative and executive branches of government, which is a separate basis for declaring the Rule to be Unconstitutional.

## VII. THIRD CAUSE OF ACTION---VIOLATION OF FEDERAL STATUES-CONGRESSIONAL REVIEW ACT and REGULATORY FLEXIBILITY ACT

Plaintiffs restate paragraphs 1.01-1.02, 2.01, 3.01-3.07, 4.01-4.14, 5.01-5.08, 6.01-6.04 and allege further:

**7.01** The economic impact of the"Final Temporary Rule" involves more than $100,000,000.00 in sales of products.

**7.02** The implementation of the "Final Temporary Rule" has a severe and devastating impact upon thousands of retail establishments in the United States, a substantial number of small business entities.

**7.03** Rules affecting more than $100.000,000.00 of commerce and having a devastating impact upon a substantial number of small businesses require following a procedure which was bypassed by the Director and is therefore unlawful.

## VIII. FOURTH CAUSE OF ACTION----EQUITY AND INJUNCTIVE RELIEF

Plaintiffs restate paragraphs 1.01-1.02, 2.01, 3.01-3.07, 4.01-4.14, 5.01-5.08, 6.01-6.04, 7.01-7.03 and allege further:

**8.01** Plaintiffs above named derive more than 50% of their sales from substances that are and/or might be made illegal by the implementation of the instant Rule.

**8.02** Plaintiffs above named will suffer irreparable injury unless the Rule is temporarily and permanently enjoined in that the economic losses will be so severe that their continued existence in business is jeopardized.

**8.03** Plaintiffs above named, and their owners, employees and customers will suffer irreparable injury as a result of criminal prosecutions, incarcerations and/or fines while the

DEA conducts studies and/or hearings to support the implementation, or non-implementation of the proposed "Final temporary rule" over the next 12 – 18 months.

## IX.  DEMAND FOR JURY TRIAL

**Plaintiffs demand jury trial on all issues so triable.**

**WHEREFORE, Plaintiffs request the Judgment and Decree of this Court as follows:**

a. That this Court issue a declaratory judgment declaring the DEA's " Final Temporary Rule" to be both Unconstitutional and unlawful under federal law.

b. That this Court issue a preliminary and permanent injunction, and until a hearing on a preliminary injunction can be had, a temporary restraining order, restraining and enjoining Defendant from enforcing the provisions of the Final temporary rule against the above named Plaintiffs.

c. In the event enforcement of the Rule is not enjoined, an award of damages against the Defendants of Plaintiffs' economic loss as established at trial.

d. An award of attorney's fees and costs, as same be be awardable.

e. Such other and further relief as the Court may deem just, fair and equitable.

Dated February 28, 2011

_[signature]_

Marc G. Kurzman # 59080
Kurzman Grant Law Office
219 Main Street, S.E., Ste. 403
Minneapolis, MN 55414
Tel: 612.617.9000
Fax  612.617.9009
Attorney for Plaintiffs

# KURZMAN GRANT
LAW OFFICE, CHARTERED

St. Anthony Main
219 S.E. Main Street, Suite 403
Minneapolis, MN 55414

Tel. (612) 617-9000
Fax (612) 617-9009
e-mail: kgolaw@aol.com

February 28, 2011

Clerk of Court
U.S. District Court
300 South Fourth Street
Minneapolis, MN 55415

RE: **L.P.O.E. Inc., et. al v. The United States DEA, et. al**
**Court File No. 10W4944 (PJS/LIB)**

Dear Clerk of Court:

Enclosed for filing, please find a copy of the following documents:

1. Civil Cover Sheet;
2. Summons and Complaint;
3. Motion for Preliminary Injunction and Temporary Restraining Order;
4. Memorandum of Law in Support of Motion for Preliminary Injunction and Temporary Restraining Order;
5. Affidavit of Todd Vanderah in Support of Temporary Restraining Order with Exhibits A and B;
6. Affidavit of Tom Tepley, dated December 22, 2010
7. Affidavit of Wael Sakallah, dated December 21, 2010;
8. Affidavit of Scott Farrell, dated December 22, 2010;
9. Affidavit of James Carlson, dated December 22, 2010;
10. Affidavit of Randy Heine, dated January 14, 2011;
11. Affidavit of Jeremiah Reistetter, dated January 17, 2011;
12. Affidavit of Blake E. Dennis, dated January 2011;
13. Affidavit of Blake E. Dennis, dated January 25, 2011;
14. Affidavit of Jim Carlson, dated January 25, 2011;
15. Affidavit of Scott Farrell, dated January 25, 2011;
16. Affidavit of Tom Tepley, dated January 25, 2011;
17. Affidavit of Wael Sakallah, dated January 26, 2011;
18. Corporate Disclosure Statement; and
19. Filing fee of $350.

Very truly yours,

Marc G. Kurzman

MGK/jjw
Enclosures
Cc: US Attorney's Office (w/enclosures)

Attorneys admitted to practice in Florida, Minnesota, Wisconsin and New York